UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

JAMES M. DUNLAP,

       Plaintiff,

   v.

COTTMAN TRANSMISSION
SYSTEMS, LLC and TODD P.
LEFF,

       Defendants.

Civil No. 2:11-cv-00272-RBS -DEM

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**I.  PRELIMINARY STATEMENT**

In this case, Plaintiff James M. Dunlap ("Dunlap"), a franchisee of AAMCO Transmissions, Inc. ("AAMCO"), seeks to assert claims of tortious interference and conspiracy against an affiliate of AAMCO, Defendant Cottman Transmission Systems, LLC ("Cottman"), and the former president of Cottman and AAMCO, Defendant Todd P. Leff ("Leff"), arising out of alleged breaches of his franchise agreement by AAMCO.[1]  Dunlap's claims for violation of Virginia Code §§ 18.2-499 and 18.2-500 in Count I should be dismissed because he has failed to

---

[1] Despite the nature of his claims, Dunlap has not named AAMCO as a party because, as he admits in his Complaint (Dkt. 1 ¶¶ 44-45), Dunlap previously litigated and settled his breach of contract claims against AAMCO.  Notwithstanding that fact, in this action Dunlap endeavors to circumvent that settlement and hold the defendants liable for the same transactions and events.  To the extent the Court denies the present motion to dismiss, the defendants will assert a defense of *res judicata* and pursue a motion for summary judgment based on the prior litigation, which was resolved through a voluntary dismissal with prejudice of AAMCO's complaint and Dunlap's counterclaim.  *See, e.g., Camacho v. Mancuso*, 53 F.3d 48, 52 (1995) ("In cases where the stipulated dismissal is with prejudice, the entry of the date of the voluntary dismissal on the docket aids the application of *res judicata* should future litigation arise out of the same transaction."); *Davenport v. Casteen*, 878 F. Supp. 871, 876 (1995) (granting summary judgment on *res judicata* defense because alleged "co-conspirators are in privity with each other for *res judicata* purposes").

allege an unlawful act undertaken through the alleged conspiracy. Dunlap's claims for tortious interference in Counts II and III of the Complaint should also be dismissed because they are barred by Virginia's two-year statute of limitations. In addition, the Court lacks personal jurisdiction over Mr. Leff, a citizen and resident of Pennsylvania who has had insufficient contacts with the Commonwealth of Virginia to meet the requirements of due process. Accordingly, all claims against him should be dismissed. In any event, the claims against Defendant Leff are due to be dismissed because, as the president of AAMCO and Cottman, he was acting as an agent for those companies. As a result, Mr. Leff cannot be liable for interference with an agreement to which his former employer, AAMCO, was a party, and he could not, as a matter of law, have conspired with either company of which he was an officer.

## II.     ARGUMENT

### A.     Standard Of Review

When ruling on a Rule 12(b)(6) motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009). As a result, the claimant must set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation and alterations omitted). The Court must then consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 129 S. Ct. at 1951. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

has not 'show[n]' – "that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

With respect to a motion under Rule 12(b)(6) asserting a statute of limitations as a bar to the action, "dismissal is appropriate where, as here, the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Halle Dev., Inc. v. Anne Arundel County*, 121 F. App'x. 504, 508 (4th Cir. 2005) (affirming dismissal based on statute of limitations defense). *See also Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed.R.Civ.P. 12(b)(6), if the time bar is apparent on the face of the complaint.").

In order for the Court to exercise jurisdiction over a party, the plaintiff "bears the burden of alleging personal jurisdiction." *Roanoke Cement Co. v. Chesapeake Prods., Inc.*, Civil No. 2:07cv97, 2007 WL 2071731, *1 (E.D. Va. 2007). When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the burden is on the plaintiff 'to prove grounds for jurisdiction by a preponderance of the evidence.'" *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 491 (E.D. Va. 2003) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

### B. Dunlap's Conspiracy Claim Under Va. Code §§ 18.2-499 and 18.2-500 Fails As A Matter of Law.

In order to state a claim for conspiracy under Virginia Code §§ 18.2-499 and 18.2-500, the plaintiff must allege an unlawful act or an unlawful purpose. In support of his claim, Dunlap principally alleges that Cottman, Leff and others conspired to induce AAMCO to breach its contract with Dunlap. Compl. ¶¶ 74(a) (alleged conspiracy to terminate his AAMCO franchise agreement), 74(b) (alleged conspiracy to have AAMCO place Dunlap in default of his

agreements wrongfully and refuse to allow him to participate in certain advertising campaigns pursuant to those agreements); 74(c) (alleged refusal by AAMCO to allow Dunlap to receive telephone calls to a general number in his market). He also alleges that Cottman or AAMCO failed to enforce certain aspects of its contracts with other franchisees. Compl. ¶¶ 74(d) (alleged "scheme" in which Cottman/AAMCO allegedly permitted conversion of a Cottman franchise to AAMCO despite agreement that franchisee could not owe any money to Cottman); 74(e)-(f) (alleged failure by Cottman to require converted franchisees to comply with contractual obligation to cease use of Cottman marks after conversion). All of these allegedly unlawful acts, however, constitute nothing more than purported breaches of contractual obligations.

As the Virginia Supreme Court recently made clear, "[a] conspiracy merely to breach a contract that does not involve an independent duty outside the contract is insufficient to establish a civil claim under Code § 18.2-500." *Station #2, LLC v. Lynch*, 280 Va. 166, 174, 695 S.E.2d 537, 541 (2010) (affirming order sustaining demurrer). "To permit a mere breach of contract to constitute an unlawful act for purposes of the conspiracy statute would be inconsistent with the diligence we have exercised to prevent turning every breach of contract into an actionable claim for fraud." *Id.* Here, Dunlap has alleged nothing more than conspiracy to breach his contracts and failure to enforce the contracts of others to his supposed detriment. He has not, however, alleged "unlawful acts" arising outside of the contracts or which constitute an independent tort or violation of any non-contractual duty owed to him. Accordingly, Dunlap has failed to state a claim under Virginia Code §§ 18.2-499 and 18.2-500, and his statutory conspiracy claim should be dismissed.

### C. Dunlap's Tortious Interference Claims Are Barred By Virginia's Two-Year Statute Of Limitations.

The Complaint alleges that the actions the defendants took which allegedly interfered with Dunlap's contracts with AAMCO and his business expectancy were taken beginning in 2006 and 2007. Compl. ¶¶ 15-20, 23-24, 28, 30-32, 37-42, 46-47, 49-50, 54, 56, 60, 63, 64-65, 89. Because the statute of limitations for tortious interference claims in Virginia is two years, those claims are untimely and barred as a matter of law.

Under Virginia Code § 8.01-248(A), "[u]nless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Because "tortious interference with business expectancy . . . is directed at the corporation's person, not its property," the two year statute of limitations for actions for personal injuries applies to such claims. *Unlimited Screw Prods., Inc. v. Malm*, 781 F. Supp. 1121, 1127 (E.D. Va. 1991) (Smith, J.). As this Court noted in its decision in the *Unlimited Screw Products* case, "Defendant's speculative injury to its business interest in the form of speculative lost profits . . . is not an injury to property that qualifies for the five-year limitations period." *Id.* at 1128. Dunlap's claims of tortious interference center on lost business (i.e., profits) allegedly resulting from customers lost due to the defendants' purported actions. As a result, Dunlap's claims also involve a personal injury, as opposed to injury to real or personal property, and are therefore subject to the two year statute of limitations.[2] Because Dunlap alleges that the

---

[2] Defendants are aware that there is competing authority on the proper statute of limitations to be applied to claims for tortious interference. *Compare Saleh v. Univ. of Va.*, No.Civ.A. 3:97-CV-460, 1999 WL 34798179 (E.D. Va. 1999) (two-year statute of limitations); *Almy v. Grisham*, 55 Va. Cir. 401, 2001 WL 34037324, *6 n.1 (2001) (two-year statute of limitations); *Agbey v. Dalloul*, 41 Va. Cir. 3, 1996 WL 1065513. *3-4 (1996) (two-year statute of limitations) *with Blue Boy, Inc. v. Zomba Recording, LLC*, Civil Action No. 3:09-CV-483-HEH, 2009 WL 2970794, *3 (E.D. Va. 2009) (noting conflict in state and federal decisions) (five-year statute of

interference began in 2006 and 2007, those claims, not filed until over four years later in 2011, are barred by the statute of limitations.

### D. Leff Is Not Subject To Personal Jurisdiction In Virginia.

As alleged in the complaint and amplified by his declaration submitted herewith, Mr. Leff has had essentially no contact with the Commonwealth of Virginia. The only allegation that makes any connection between Leff and Virginia is that he participated in a single meeting in Richmond in 2006; however, that meeting does not give rise to any cause of action asserted by Dunlap. Nor can Leff be subjected to jurisdiction in Virginia solely because he was an officer of companies subject to personal jurisdiction in Virginia. Leff thus lacks the minimum contacts that due process requires to subject him to the jurisdiction of Virginia courts, and the claims against him should be dismissed.

To determine whether Leff is subject to personal jurisdiction, the Court must first examine whether the Virginia long-arm statute provides a basis for the assertion of jurisdiction; if there is a statutory basis for assertion of jurisdiction, the Court then considers whether the exercise of jurisdiction is permissible under the Due Process Clause. *Bay Tobacco*, 261 F. Supp. 2d at 491. Generally speaking, the Virginia long-arm statute permits the exercise of jurisdiction over a person (1) who transacts any business in state; (2) who contracts to supply services or things in the state; (3) who causes a tortious injury through actions in the Commonwealth; or (4) who causes such injuries through actions outside of the Commonwealth if the person also

---

limitations); *Williams v. Reynolds*, Civil No. 4:06CV00020, 2006 WL 3198968, *5 (W.D. Va. 2006) (five-year statute of limitations); *Welch v. Kennedy Piggly Wiggly Stores, Inc.*, 63 B.R. 888, 898 (W.D. Va. 1986) (five-year statute of limitations). And while the Virginia Supreme Court has not weighed in on this debate, this Court's decision in *Unlimited Screw Products* (as well as the more recent *Saleh* decision) examines more recent Virginia Supreme Court decisions in determining that the two-year limitations period should be applied to tortious interference claims. The cases applying the five-year limitations period do so without the same rigorous analysis, and, as this Court concluded in *Unlimited Screw Products*, are not persuasive.

"regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in the Virginia. Va. Code. § 8.01-328.1(A)(1)-(4). Because the Virginia long-arm statute has been held to extend the jurisdiction of its courts to the limits of due process, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries become essentially one." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

>   The Fourth Circuit has described the due process analysis as follows:
>
>> In order for a court's exercise of jurisdiction to satisfy due process requirements, a defendant must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotes omitted). In applying this standard, the constitutional benchmark is "whether the defendant purposefully established minimum contacts in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotes omitted). Furthermore, a defendant should be able to anticipate being brought to court in the forum, in that contacts "must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir.1997); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980). In essence, a defendant must have minimum contacts with the forum state, and a court's exercise of jurisdiction must be reasonable.

*ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176-77 (4th Cir. 2002). Under this rubric, a defendant is "not immune from jurisdiction in Virginia merely because her contacts with the Commonwealth were made ostensibly on behalf of [her company]." *Id.* at 177. However, "the contacts of a company are not attributed to a corporate agent for jurisdictional purposes." *Id.* Moreover, "when a suit does not arise out of the defendant's activities in the forum state, the court must exercise general jurisdiction and the requisite minimum contacts between the defendant and the forum state are fairly extensive." *Bay Tobacco*, 261 F. Supp. 2d at 497

(quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (internal quotation marks omitted).  Here, the Complaint fails to establish that Leff is subject to personal jurisdiction in Virginia.

Leff has no connection with the Commonwealth of Virginia and, as a result, there is no basis for asserting general jurisdiction over him.  Leff has never lived or worked in Virginia.  Declaration of Todd P. Leff ("Leff Decl.") ¶ 5.  He does not own property in Virginia or maintain any bank accounts in the Commonwealth.  *Id.* ¶¶ 5-6.  He has never solicited or entered into any transactions in Virginia or otherwise engaged in any business in Virginia.  *Id.* ¶ 6, 9.  Rather than being "fairly extensive," his contacts with Virginia are essentially non-existent.

Similarly, the allegation regarding Leff's isolated contact with Virginia is insufficient to confer specific jurisdiction over him.  The Complaint alleges a single contact by Leff with Virginia:  Leff co-chaired one meeting of AAMCO and Cottman franchisees in Richmond on May 4, 2006, in which Leff allegedly stated the following:

> (a) the Cottman name would no longer be developed; (b) there would be a three year conversion plan to convert all Cottman centers to AAMCO centers; (c) the Tidewater market was deemed one of the most conflicted markets due to the close proximity of the existing dealers; and (d) the terms of the AAMCO marketing agreement would be honored.

Compl. ¶ 28.  There is no other allegation of any connection between Leff and the Commonwealth.  Because this single contact is not tortious and does not give rise to any cause of action, it is insufficient to confer specific jurisdiction over Leff.  *See Shestul v. Moeser*, 344 F.Supp.2d 946, 949 (E.D. Va. 2004) ("Although . . . Virginia is a 'single-act state,' requiring only one tortious act to be committed for a court to exert personal jurisdiction over a party, defendant . . . has not committed any torts in Virginia."); *Haynes v. James H. Carr, Inc.*, 307 F. Supp. 1228, 1231 (E.D. Va. 1969) (rejecting argument that single visit to Virginia by

representative defendant to inspect allegedly defective materials conferred jurisdiction under the Virginia long-arm statute because "[i]t is difficult to believe that the courts could hold such a single act as constituting transacting business. It appears to be only an incidental activity.").

Moreover, there are no other allegations in the Complaint regarding Leff and his purported actions that establish any connection with Virginia at all, much less any that would be sufficient to confer specific jurisdiction. *See* Leff Decl. ¶¶ 7-9. The Complaint alleges that Leff was president of Cottman, American Driveline Systems, Inc. (the parent company of Cottman and AAMCO), and AAMCO. Compl. ¶¶ 3, 9, 11. But the fact that he was the president of companies subject to jurisdiction in Virginia cannot in and of itself establish jurisdiction over him personally. *Shestul*, 344 F.Supp.2d at 949 ("[A]lthough [the corporate defendant] clearly conducts business within Virginia, this contact cannot be imputed to [the individual defendant] simply because she is an employee of [the corporate defendant]."); *D'Addario v. Geller*, 264 F.Supp.2d 367, 380-81 (E.D. Va. 2003) ("A corporate agent is not subject to personal jurisdiction in his individual capacity under the long-arm statute solely based upon his status as a corporate officer or agent."); Leff Decl. ¶¶ 2-4, 7-9.

Nor are the conclusory allegations that Leff (as one of "the defendants") was involved in making decisions related to the Cottman and AAMCO systems in the Tidewater area and Dunlap's termination (Compl. ¶¶ 21, 28, 37, 40, 66-69, 72) sufficient because there is no allegation of any specific action taken by Leff or that his involvement furthered any independent personal interest.[3] Indeed, even if Leff "received additional compensation for each Cottman

---

[3] As a result, this case is distinguishable from cases in this Circuit where the Courts have concluded that a nonresident officer or employee was subject to personal jurisdiction because the officer or employee was alleged to have directed numerous specific actions to Virginia for personal interests independent of the interests of their principals. *See, e.g., ePlus Technology*, 313 F.3d at 177 (jurisdiction found where shell company president (and alter ego) submitted

- 9 -

franchise that converted to an AAMCO center" as Dunlap alleges (Compl. ¶¶ 22), that would not give Leff a personal stake in purportedly conspiring to eliminate Dunlap as an AAMCO franchisee. In any event, because Leff lacks regular and persistent contact with Virginia (Leff Decl. ¶¶ 5-9), these alleged acts outside the Commonwealth cannot confer jurisdiction under the long-arm statute or due process. *See* Va. Code. § 8.01-328.1(A)(4).

All the Complaint alleges is that Defendant Leff participated in a single meeting with his companies' franchisees in Richmond, Virginia. Mr. Leff's declaration establishes that he has had essentially no other contact with Virginia, and there are no allegations of any specific actions by Leff sufficient to establish the minimum contacts necessary for him to have anticipated being sued in Virginia. Accordingly, due process requires that he be dismissed from this action for lack of personal jurisdiction.

### E. Leff Cannot Be Liable For Tortious Interference Or Conspiracy As A Matter Of Law.

The complaint also fails to state a claim against Leff because of the well-settled rule that an officer of a company cannot conspire with or interfere with the contracts of that company.

#### 1. Leff Could Not Conspire With Cottman or AAMCO Because He Was An Officer Of Those Companies.

"Under Virginia law, a corporation cannot conspire with its agents. . . . Such a conspiracy is a legal impossibility because the actors are not separate persons for purposes of the conspiracy statute, but rather form part of a single entity, the corporation, which cannot conspire with itself." *Phoenix Renovation Corp. v. Rodriguez*, 258 Fed. App'x 526, 539 (4th Cir. 2007). This

---

false information about the company's financial statute to Virginia entities in furtherance of fraudulent scheme to obtain financing for the company which was then transferred directly to the defendant and her co-conspirators); *D'Addario*, 264 F. Supp. 2d at 379-80 (finding jurisdiction where salvage company's officers repeatedly submitted fraudulent statements to Virginia court to conceal their scheme to loot the Titanic shipwreck for personal gain at the expense of company shareholders).

doctrine, known as the intracorporate immunity doctrine, has been relied upon repeatedly to defeat claims under Virginia Code §§ 18.2-499 and 18.2-500.[4] Because Leff was the president of both AAMCO and Cottman at the time of the alleged conspiracy, he cannot have conspired with those entities as a matter of law. Nor can Dunlap attempt to circumvent this rule by arguing that he has sued Leff in his individual capacity or that Leff had some independent personal stake that places him outside of the intracorporate immunity. As this Court has recognized, the Fourth Circuit has held that

> the immunity granted under the doctrine to the agents and the corporation is not destroyed because the agents are sued individually. Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation.

*Lewin*, 95 F. Supp. 2d at 513 (quoting *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)) (internal quotations and alteration omitted). Moreover, "Virginia has not recognized the so-called 'personal stake' exception to [the intracorporate immunity doctrine] when the conspiring agent has an independent personal stake in achieving the conspiracy's illegal objective." *Phoenix Renovation Corp. v. Rodriquez*, 461 F. Supp. 411, 429 (E.D. Va. 2006) *aff'd* 258 Fed. App'x 526 (2007) (citing *Softwise, Inc. v. Rana Goodrich, M.D., P.C.*, 63 Va. Cir. 576, 578,

---

[4] *See, e.g., Heirs v. Cave Hill Corp.*, 51 Va. Cir. 208, 212, 2000 WL 144359, *4 (2000) (holding that under the intracorporate immunity doctrine, "there cannot be a valid claim where it is alleged that an employee or agent of the corporation is alleged to have conspired with the corporation") (citing *Fox v. Deese*, 234 Va. 412, 328, 362 S.E.2d 699, 708 (1987)); *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 617 (E.D. Va. 2005) (granting motion to dismiss and holding that "an entity can neither combine nor conspire with an agent under Virginia law" because "[t]he doctrine of intracorporate immunity . . . recognizes that, . . . because a corporation and its agents comprise a single entity, they are legally incapable of conspiracy"); *Mich. Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) ("Generally, an agent cannot conspire with its principal."); *Lewin v. Cooke*, 95 F. Supp. 2d 513, 524-25 (E.D. Va. 2000) ("holding that "[t]he doctrine of intracorporate immunity recognizes that, . . . because a corporation and its agents comprise a single entity, they are legally incapable of conspiracy" and that "an alleged conspiracy between an employer and its employees acting within the scope of their employment, is a conspiracy of one, a legal impossibility").

(Va. Cir. Ct. 2003)); *see also Hiers*, 51 Va. Cir. at 212, 2000 WL 145359, at *4 ("Although the Virginia Supreme Court has adopted the intracorporate immunity doctrine, it has not adopted [the personal stake] exception to this doctrine."). Because Leff cannot have conspired with AAMCO or Cottman as a matter of law, Dunlap fails to state a claim under Virginia Code §§ 18.2-499 and 18.2-500 against Leff.

### 2. Leff Cannot Be Personally Liable For Tortious Interference.

Under Virginia law "an agent cannot as a matter of law interfere with his principal's contract." *Michigan Mutual Insurance*, 128 F. Supp. 2d at 925 (citing *Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987)). Moreover, "if an employee is acting within the scope of his employment, he is acting as an agent of his employer and cannot be labeled as an interferor or third party." *Hiers*, 51 Va. Cir. at 212, 2000 WL 145359, at *4 (citing *Fox* and *Haigh v. Matsushaita Elec. Corp.*, 676 F. Supp. 1332 (E.D. Va. 1987)). Thus, Leff, as president of AAMCO, cannot have interfered with AAMCO's contract with Dunlap. Similarly, by acting as the president of Cottman in connection with Cottman's dealings with Cottman and AAMCO franchisees, Leff was acting within the scope of his employment and cannot himself "be labeled as an interferor." Nor has Dunlap alleged that Leff was acting outside of the scope of his employment. *See SecureInfo*, 387 F. Supp. 2d at 618 (granting motion to dismiss because consultant was agent of party to contract and there were no factual allegations that he acted outside the scope of his agency). Thus, Dunlap cannot state a claim against Leff for tortious interference.

**III.** **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss the Complaint should be granted.

Respectfully submitted,

/s/
James C. Rubinger
Virginia Bar No. 20317
Benjamin B. Reed
Virginia Bar No. 78190
*Counsel for Defendants*
PLAVE KOCH PLC.
12355 Sunrise Valley Drive, Suite 230
Reston, VA  20191
Tel:  (703) 774-1208
Fax:  (703) 774-1201
jrubinger@plavekoch.com
breed@plavekoch.com

May 25, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of May, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system and I hereby certify that I will mail the document by U.S. mail to the following non-filing user:

    James M. Dunlap
    1312 Debree Avenue
    Norfolk, VA 23517

                                              /s/
                                  Benjamin B. Reed
                                  Virginia Bar No. 78190
                                  *Counsel for Defendants*
                                  PLAVE KOCH PLC.
                                  12355 Sunrise Valley Drive, Suite 230
                                  Reston, VA  20191
                                  Tel:  (703) 774-1208
                                  Fax:  (703) 774-1201
                                  breed@plavekoch.com