**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**JAMES M. DUNLAP,**

      **Plaintiff,**

      v.                                       Civil No.  2:11-cv-00272-AWA-DEM

**COTTMAN TRANSMISSION
SYSTEMS, LLC and TODD P.
LEFF,**

      **Defendants.**

## REPLY OF DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS

**I.**      **PRELIMINARY STATEMENT**

Dunlap's Opposition to Defendents' Motion to Dismiss ("Opp."), like his Complaint, devotes pages and pages to extraneous allegations designed largely to confuse and obfuscate the real issues. But boiled down to its essence, the Complaint alleges:

- Dunlap owned AAMCO franchises, pursuant to franchise agreements with AAMCO Transmissions, Inc.

- After Cottman and AAMCO came under common ownership, AAMCO, Cottman, Leff (AAMCO's president) and others allegedly engaged in a conspiracy to cause AAMCO to breach its agreements with Dunlap.

- The only alleged harm to Dunlap was the breach of his AAMCO franchise agreements; in the absence of those agreements or their breach, there was no actionable harm to him.

From these facts flow the legal principles that require dismissal of this case:

- There was neither harm to Dunlap nor a wrongful act other than the alleged breach of his AAMCO agreements. But, the mere breach of a contract, standing alone, cannot be the "wrongful act" supporting an actionable conspiracy in violation of the Virginia conspiracy statute.

- The alleged harm to Dunlap has nothing to do with injury to property, but is rather injury to his personal rights, which requires application of the two year, rather than five year, statute of limitations.

- The linchpin of the alleged conspiracy is AAMCO's alleged breach of its agreements with Dunlap. Leff, AAMCO's president at all relevant times, cannot be held liable for conspiring with his own company or for tortiously interfering with his own company's contracts. Despite Dunlap's attempt to paint his conspiracy allegations as a far-flung conspiracy among many players, any alleged conspiracy between Leff and anyone else is not actionable because without AAMCO, it could not have harmed Dunlap. Moreover, the narrow "personal stake" exception argued by Dunlap is inapplicable, as relevant authority, including the cases cited by Dunlap make clear, the alleged "personal stake" Leff purportedly had was not independent of AAMCO's interest.

- Because there is no actionable conspiracy alleged against Leff, the alleged acts of his "coconspirators" cannot be attributed to him for jurisdictional purposes, and his "single act" in Virginia, itself not tortious or actionable in any way, cannot confer jurisdiction over him.

The most telling argument in Dunlap's opposition is the final one: it says, in sum, "please let me take discovery so perhaps I can find a claim." (Opp., at 22). That, of course, is

not how the process works. It was and is Dunlap's burden to state a claim on the face of his complaint. As the Supreme Court recently underscored in its *Iqbal* and *Twombly* decisions, that burden requires a plaintiff to state facts that state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. --, 129 S.Ct. 1937, 1949 (2009). Dunlap's lengthy recitation of perceived slights does not begin to state a plausible claim against either Cottman or Leff. Dunlap's Complaint should be dismissed.

## II. ARGUMENT

### A. Dunlap Has Failed To Alleged A Tortious Act That Would Support A Claim Under The Virginia Conspiracy Statute.

The Virginia Supreme Court has made clear that an alleged conspiracy to breach a contract is not actionable. *Station #2, LLC v. Lynch*, 280 Va. 166, 174, 695 S.E.2d 537, 541 (2010)(cited in Defs. Br at 4). In the present instance, Dunlap has alleged no acts that were wrongful or tortious in any way. All of the acts identified by Dunlap as predicates for his claim (Opp. at 7) are at most alleged breaches of contract; not a single one is otherwise tortious or unlawful in any way. Thus, Dunlap's claim under the Virginia conspiracy statute is precisely a conspiracy to breach a contract, which the Virginia Supreme Court held in *Station #2 LLC* does not state a claim. *See also R & D 2001, LLC v. Collins*, No. CL-2005-7021, 2006 WL 2578503, at *3-4 (Va. Cir. Ct. July 12, 2006) (rejecting argument that allegation of tortious interference constitutes a wrongful act under the Virginia conspiracy statute).

In *Zurich Am. Ins. Co. v. Turbyfill*, Civ. No. 7:10-cv-282, 2010 WL 4065527, at *7 (W.D. Va. Oct. 15, 2010), the court, quoting *Station #2, LLC,* held that "supporting a conspiracy claim with an allegation of tortious interference . . . runs the risk of contravening the Virginia courts' long-standing distaste for 'turning every breach of contract into an actionable [tort] claim'". As the Virginia Supreme Court held in *Station #2, LLC,* in order for a breach of contract claim to be

the predicate for a claim under the conspiracy statute, the plaintiff must identify "an independent duty outside the contract." *Station #2*, 695 S.E.2d at 541 (Defs. Br. at 4). Dunlap's complaint fails to allege any independent duty outside his agreements with AAMCO. Accordingly, the claim under the conspiracy statute must be dismissed.

### B. The Tortious Interference Claims Are Barred By The Two Year Statute Of Limitations.

Dunlap argues that the five year statute of limitations, governing claims for injury to property, should apply to his tortious interference claims, rather than the two year statute applicable to claims for personal injuries, "whatever the theory of recovery" (Va. Code § 8.01-248(A)). However, while conflicting authority does exist, the more persuasive authority applies a two year statute of limitations to tortious interference claims. For example, *Unlimited Screw Products, Inc. v. Malm*, 781 F. Supp. 1121, 1127 (E.D. Va. 1991) and *Saleh v. Univ. of Va.*, No.Civ.A. 3:97-CV-460, 1999 WL 34798179 (E.D. Va. 1999) analyze precedent and provide persuasive reasons for the application of the two year statute. As Judge Smith concluded in *Unlimited Screw Products*, the essence of the tortious interference claim directed against a personal business is not damage to property, but rather the lost profits that the individual plaintiff hoped to make. 781 F. Supp. at 1127. This constitutes injury to the person expecting to earn the profits, not some inchoate damage to a property right. *Id.*

In contrast, the cases applying a five year statute of limitations to a tortious interference claim offer little or no persuasive analysis or reasoning. Moreover, Dunlap offers no logic or reason to refute Judge Smith's analysis in *Unlimited Screw Products*, but instead merely criticizes Judge Smith for purportedly not applying precedent properly. (Opp. at 9). However, Judge Smith never suggested that the cases she cited were controlling; rather, she cited them as examples of analogous applications of the two year statute. 781 F. Supp. at 1127

The Virginia Supreme Court decision in *Pigott v. Moran*, 231 Va. 76, 81, 341 S.E.2d 179, 182 (1986), which Dunlap criticizes Judge Smith for citing, is particularly analogous to *this* case. In *Pigott*, the Virginia Supreme Court applied to the two year statute of limitations to a claim that the defendant caused the value of the plaintiff's real property to decline. *Id*. Although the plaintiff had alleged that tortious conduct damaged the value of the real property, the Virginia Supreme Court held that the conduct was directed at the plaintiff personally, and the harm was personal, in the form of the plaintiff's loss of his investment. *Id.* Dunlap does not explain why this analysis should not be applied to his claim for lost profits arising out of an alleged interference with contract. Indeed, Dunlap's claim implicates harm to "property" considerably less than the plaintiff's claim in *Pigott*.

Finally, Dunlap half-heartedly argues that the conduct alleged in the Complaint falls within the two year limitations period (Opp. at 10), and that, therefore, the tortious interference claims should not be dismissed. However, Dunlap does not contest that his claims arose in 2006 and 2007. In addition, he concedes that he settled nearly identical claims arising out of the same facts with AAMCO in 2007.[1] Dunlap has not included AAMCO as a defendant in the present case because the same issues were litigated and settled between Dunlap and AAMCO four years ago. The present action is merely an attempt by Dunlap to refashion the same claims he alleged four years ago against AAMCO, and settled, as conspiracy and tortious interference

---

[1] In both the Complaint and the Opposition, Dunlap acknowledges that he settled a case commenced by AAMCO. (Compl. ¶¶ 44-45; Opp. at 4). The Court may take judicial notice of *AAMCO Transmission Systems, Inc. v. Dunlap*, Civil No. 07-00562 (TJS) (E.D. Pa.) and of the fact that in that case Dunlap filed a Counterclaim based on the same factual allegations that purport to form the basis for his present claims. See Declaration of James Goniea.

claims against AAMCO's former President and Cottman, a company affiliated with AAMCO.[2]

### C. The Claims Against Leff Must be Dismissed

#### 1. Leff's Single Act in Virginia Was Not Tortious or Wrongful and Does Not Support the Exercise of Personal Jurisdiction Over Him

In attempting to support the exercise of personal jurisdiction over Leff, Dunlap argues that Leff's one appearance in Virginia was at a meeting in 2006 at which Leff appeared "as President of AAMCO and Cottman" (Opp. at 13; Compl. ¶ 13). Dunlap then argues that Leff's involvement in the alleged conspiracy was independent of his role as President of AAMCO— because on "information and belief" Leff purportedly received additional compensation for each Cottman franchisee that converted to an AAMCO center (Opp. at. 21). Even if this alleged fact were true (it is not true), Leff's compensation as the President of AAMCO can hardly be characterized as independent of his role as President of AAMCO.

Indeed, the allegations against Leff and the arguments made in Dunlap's opposition demonstrate the complete absence of any basis for asserting a claim against him. Dunlap has utterly failed to refute Leff's showing that the had no contact with Virginia, other than the one meeting at which he appeared in his corporate capacity, which took place outside the limitations period, and at which Leff did nothing tortious or actionable in any way. At that meeting, he is alleged only to have announced a corporate policy with respect to the Tidewater market, an act that was not itself tortious and for which he could not be held personally liable. Under the unbroken line of cases set forth in our moving brief (at pp. 8-9), which Dunlap does not seek to distinguish, there can be no personal jurisdiction over Leff.

---

[2] In addition, Dunlap's Opposition misstates the relevant dates. The present action was filed on April 29, *2011*, not 2010 as stated in the Opposition papers. (Opp., p. 10) Thus, to satisfy the two year limitations period, the relevant conduct would have had to have occurred after April 28, *2009*, not April 28, 2008.

### 2. Leff Could Neither Conspire Nor Interfere with the Contracts of AAMCO

Dunlap has also fails to explain how Leff can be held to have conspired with a company of which he was president, or tortiously interfered with that company's contracts. As the Defendants argued in their moving brief, as a matter of law, Leff cannot be held to have done either one. (Defs. Br. at 10-12) As a matter of law, Leff cannot be held personal liable for conspiring to cause the breach of, or for tortiously interfering with the performance of, contracts to which the company of which he was president was a party. *See, e.g, SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 617-18 (E.D. Va. 2005); *Mich. Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000); *Lewin v. Cooke*, 95 F. Supp. 2d 513, 524-25 (E.D. Va. 2000).

Moreover, Dunlap's contention that Leff had a personal stake in the interference with the contacts between Dunlap and AAMCO that justifies treating him as an independent conspirator lacks merit. Dunlap alleges on information and belief that Leff received additional compensation for the conversion of Cottman centers to AAMCO centers, "providing a personal independent stake in the success of the conversion program." (Compl. ¶ 22; Opp. at 21). However, none of the cases cited by Dunlap supports this theory. To the contrary, in *Douty v. Irwin Mortgage Corp.*, 70 F. Supp 2d 626, 631-33 (E.D. Va. 1999), Judge Brinkema rejected a similar argument. There, the plaintiff argued that the individual defendants' receipt of commissions for the complained-of acts constituted an individual personal stake sufficient to defeat the intra-corporate conspiracy doctrine. Judge Brinkema rejected that argument, holding that the "personal stake" exception was "limited and the plaintiff had not alleged a personal stake independent of the defendants' relationship with the corporation. *Id.* at 633.

In a case decided earlier this year, the court again emphasized that the "personal stake" required for this exception to apply must be truly "independent." In *Baylor v. Comprehensive*

*Pain Management Centers, Inc.*, Civil No. 7:09cv00472, 2011 WL 1327396, at *13-14 (W.D. Va. Apr. 6, 2011), the court refused to apply this exception, reasoning:

> The point of the exception is that there can be no unity of purpose between a corporation and its agents if the agents have a personal stake independent of the interests of the corporation. . . . Every corporate employee has a personal stake in his or her paycheck, but that stake is not independent of the corporation. To accept Dr. Baylor's argument would require the court to read the independent element out of the independent personal stake exception. In so doing, the exception would swallow the rule. . . . The Fourth Circuit cases cited by Dr. Baylor [two of which were cited by Dunlap] do not support such an expansive view of the independent personal stake exception. . . . Dr. Kelly and the Samarsinghes' personal stakes are dependent on that of CPMC. Only when CPMC succeeds do they succeed. The personal stake exception simply does not apply here.[3]

Furthermore, Dunlap's suggestion that Judge Cacheris "flip flopped" on this issue (Opp. at 20) is also without merit. In the only opinion in which Judge Cacheris addressed the issue explicitly, he observed accurately that the Virginia Supreme Court has not adopted the personal stake exception (*see Phoenix Renovation Corp. v. Rodriguez*, 461 F.Supp.2d at 429); in the subsequent two cases in which he applied it, it is not apparent from the opinion that either side actually argued that point. Contrary to Dunlap's suggestion, Judge Cacheris did *not* in either of those opinions "reverse his position." (Opp. at 20). *The Flexible Benefits Council v. Feltman*, 2008 WL 2465457 (E.D. Va. 2008); *Buffalo Wings Factory, Inc. v. Feltman,* 622 F.Supp.2d 325 (E.D. Va. 2007).

---

[3] In addition, the court noted that "a number of Virginia cases have rejected application of this exception, reasoning that it has not been adopted by the Virginia Supreme Court." 2011 WL 13273976, at *14 (citing *White v. Potocska*, 589 F.Supp.2d 631, 660 (E.D.Va.2008); *Phoenix Renovation Corp. v. Rodriguez*, 461 F.Supp.2d 411, 429 (E.D.Va.2006); *Softwise, Inc. v. Rana Goodrich, M.D., P.C.*, 63 Va. Cir. 576, 578 (Roanoke City 2004); and *Little Professor Book Co. v. Reston North Point Vill. Ltd. P'ship.*, 41 Va. Cir. 73, 79 (Fairfax County 1996).

The absence of any actionable conspiracy, in turn, refutes Dunlap's argument that the acts of Leff's alleged coconspirators should be attributed to him for jurisdictional purposes. If he is unable to conspire as a matter of law to commit the harm alleged in the complaint, he cannot be held accountable for the acts of the alleged conspirators. *Noble Sec., Inc. v. MIZ Engineering, Ltd.*, 611 F.Supp.2d 513 (E.D. Va. 2009)(absent allegation of an actionable conspiracy, the acts of the alleged co-conspirators cannot be attributed to the defendant for personal jurisdictional purposes). To hold otherwise would effectively attribute the acts of the corporation to each officer for jurisdictional purposes, which Virginia courts will not do. *Shestul v. Moeser*, 344 F.Supp.2d 946, 949 (E.D. Va. 2004) ("[A]lthough [the corporate defendant] clearly conducts business within Virginia, this contact cannot be imputed to [the individual defendant] simply because she is an employee of [the corporate defendant]."); *D'Addario v. Geller*, 264 F.Supp.2d 367, 380-81 (E.D. Va. 2003) ("A corporate agent is not subject to personal jurisdiction in his individual capacity under the long-arm statute solely based upon his status as a corporate officer or agent.")

**III.     CONCLUSION**

Dunlap's attempt to hold Cottman and Leff liable for alleged breaches by AAMCO (claims he asserted and settled in 2007) should not be permitted. There is not cognizable claim for conspiracy against either defendant. The claims are all barred by the applicable two year statute of limitations. Leff is not subject to the court's personal jurisdiction; and Leff is not legally capable of conspiring with, or interfering with the contracts of, a company of which he was president. The complaint should be dismissed.

> Respectfully submitted,
>
> /s/
> James C. Rubinger
> Virginia Bar No. 20317
> Benjamin B. Reed
> Virginia Bar No. 78190
> *Counsel for Defendants*
> PLAVE KOCH PLC.
> 12355 Sunrise Valley Drive, Suite 230
> Reston, VA  20191
> Tel:  (703) 774-1208
> Fax:  (703) 774-1201
> jrubinger@plavekoch.com
> breed@plavekoch.com

June 22, 2011

Case 2:11-cv-00272-AWA -DEM   Document 14   Filed 06/22/11   Page 11 of 11 PageID# 122

## CERTIFICATE OF SERVICE

I hereby certify that on the 22d day of June, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which sent notice to the following:

W. Michael Holm, Esq.
Williams Mullen, P.C.
8300 Greensboro Drive, Suite 1100
McLean, VA 22102
mholm@williamsmullen.com

Stephan E. Anthony, Esq.
Williams Mullen, P.C.
999 Waterside Drive, Suite 1700
Norfolk, VA 23510
santhony@williamsmullen.com

*Counsel for Plaintiff*

                                            /s/
                                   Benjamin B. Reed
                                   Virginia Bar No. 78190
                                   *Counsel for Defendants*
                                   PLAVE KOCH PLC.
                                   12355 Sunrise Valley Drive, Suite 230
                                   Reston, VA  20191
                                   Tel:  (703) 774-1208
                                   Fax:  (703) 774-1201
                                   breed@plavekoch.com