**COMPARISON OF ALLEGATIONS BETWEEN THIS CASE AND 2007 LAWSUIT**

| Complaint—This case | 2007 Law Suit: Amended Counterclaim (Ex. 3) ("Am.CC") and Affidavit of James M. Dunlap (Ex. 4) ("Dunlap Aff.") |
|---|---|
| ¶10 – On or about March 3, 2006, ADS acquired an 83% interest on a fully diluted basis in AAMCO. This acquisition involved senior term loans, senior and junior subordinated debt, and preferred and common stock. | On March 8, 2006, Cottman Transmission merged with AAMCO Transmissions, Inc. (hereinafter jointly referred to as "ATI"). Am.CC ¶1 |
| ¶28 – On May 4, 2006, Leff, Dimuzzio and Brian O'Donnell, AAMCO's Senior Vice President of Operations, chaired a meeting of AAMCO and Cottman dealers in Richmond, Virginia. Among those in attendance, in addition to Dunlap, were Truskowski and Biller. The dealers in attendance were from throughout Virginia. All of the dealers from the Tidewater, Virginia market attended. During that meeting, Leff made the following statements: (a) the Cottman name would no longer be developed; (b) there would be a three year conversion plan to convert all Cottman centers to AAMCO centers; (c) the Tidewater market was deemed one of the most conflicted markets due to the close proximity of the existing dealers; and (d) the terms of the AAMCO marketing agreement would be honored. Based upon the marketing agreement, there were 12 centers allocated to the Tidewater market. With the combination of AAMCO and Cottman centers, there were 14 centers in existence in that market. Leff stated his intent to close two of those centers. | Mr. Leff concluded that ATI had determined that there were 2 AAMCO centers too many in the market. Am CC. ¶5<br><br>Mr. Leff concluded that AAMCO had determined that there were 2 AAMCO centers too many in the market served by the Centers. Dunlap Aff. ¶101 |

**COMPARISON OF ALLEGATIONS BETWEEN THIS CASE AND 2007 LAWSUIT**

| Complaint—This case | 2007 Law Suit: Amended Counterclaim (Ex. 3) ("Am.CC") and Affidavit of James M. Dunlap (Ex. 4) ("Dunlap Aff.") |
|---|---|
| ¶29 – Advertising in the local yellow pages is and has always been critical to the financial success of AAMCO centers. Such advertising is coordinated by the local ad pool in which all franchisees participate. At the time of the meeting in Richmond, the closing date for placement of the Verizon Yellow Pages ad in the Tidewater area was imminent. | As AAMCO is well aware, advertising in the local yellow pages is absolutely critical to maintaining the value of the Centers and is the primary source of new customers. Dunlap Aff. ¶92

ATI has also wrongfully denied counterclaimant Dunlap access to ATI advertising, including the placement of ads in the various Yellow Pages, which has significantly harmed Counterclaimant's business by reducing the number of customers and created the impression in the market that counterclaimant Dunlap is not an authorized AAMCO franchise. Am. CC ¶16 |
| ¶31 – On May 10, 2006, AAMCO and Cottman entered into a binding contract with Biller to amend his Cottman License Agreement and convert his Chesapeake, Virginia center to an AAMCO center. Under the terms of the amendment, except as modified, the Cottman License Agreement would remain in effect. | At the same time, AAMCO completed the conversion of a former Cottman Transmission Center in Chesapeake, Virginia into an AAMCO Center. Dunlap Aff. ¶95 |
| ¶32 – On May 16, 2006, AAMCO and Cottman entered into a binding contract with Truskowski to amend his Cottman License Agreement and convert his Portsmouth, Virginia center to an AAMCO center. Under the terms of the agreement, except as modified, the Cottman License Agreement would remain in effect. | The New Portsmouth AAMCO Center is owned and operated by Joseph Turkowski, and the center is less than a mile away from the Portsmouth Center. Dunlap Aff. ¶96 |
| ¶37 – In furtherance of Leff's commitment to closing two Tidewater AAMCO centers stated at the Richmond meeting, on May 8, 2006, AAMCO notified Dunlap of alleged defaults under both of his franchise agreements ("Notice of Default"). The terms of the franchise agreements afford the franchisee 10 days to cure financial defaults and 30 days to cure administrative defaults. | In pursuit of its wrongful plans to terminate the Portsmouth Center and Chesapeake Center, ATI sent letters to counterclaimant Dunlap alleging that he was not in compliance with the respective franchise agreements and demanding that he cure his alleged non-compliance or risk termination as an authorized franchise. Am. CC ¶7 |

**COMPARISON OF ALLEGATIONS BETWEEN THIS CASE AND 2007 LAWSUIT**

| Complaint—This case | 2007 Law Suit: Amended Counterclaim (Ex. 3) ("Am.CC") and Affidavit of James M. Dunlap (Ex. 4) ("Dunlap Aff.") |
|---|---|
| ¶38(a) – <u>Weekly Financial Reports</u>. AAMCO alleged that Dunlap had failed to submit a number of weekly financial reports to the central office. Even though Dunlap's center manager, Robert Wynn, had submitted the reports in November 2005, the reports had never been recorded because of a lack of communication within AAMCO's Financial Services Department. In April or May of 2006, an AAMCO employee known only as Barbara acknowledged the presence of the reports. At the time of the Notice of Default, the reports had been in the possession of AAMVCO for over five month and AAMCO had never expressed any concerns over the substance of the submitted reports. Nevertheless, Dunlap resubmitted the reports on June 8, 2006. They were sent Priority Mail, return receipt requested. | Throughout my history with AAMCO, I have been wrongfully accused of not submitting reports and not paying costs or expenses that were purportedly due to AAMCO. Dunlap Aff. ¶35 In the late 2005 and early 2006, AAMCO again began to wrongfully accuse me of failing to submit weekly reports. Dunlap Aff. ¶58<br><br>On two separate occasions I submitted all of the reports requested by AAMCO but still was not given credit for the submissions. Dunlap Aff. ¶59<br><br>Also within the thirty day period after receipt of the Termination Letters, I submitted all of the available weekly reports and repair orders that were identified in the Termination Letters. Dunlap Aff. ¶75<br><br>Thus, I cured all of the deficiencies identified in the Termination Letters within the time periods provided for in the respective franchise agreements. Dunlap Aff. ¶76 |

3

**COMPARISON OF ALLEGATIONS BETWEEN THIS CASE AND 2007 LAWSUIT**

| Complaint—This case | 2007 Law Suit: Amended Counterclaim (Ex. 3) ("Am.CC") and Affidavit of James M. Dunlap (Ex. 4) ("Dunlap Aff.") |
|---|---|
| ¶38(b) - <u>Franchise Fees</u>.  The majority of fees AAMCO alleged were outstanding had been paid prior to Mach 8, 2006, but had not been properly credited to his accounts.  For example, Dunlap had sent several payments in October 2005, but those payments had not been recorded by AAMCO.  In December 2005, Dunlap sent copies of the cancelled checks to the current AAMCO counsel, Karen Von Dreusche.  The letter from Dunlap, dated December 22, 2005, never received a response. On April 1, 2006, Dunlap sent a fax to Gerald Ferrier pointing out the failure of AAMCO to property credit is accounts.  As a result, the October 2005 check for the Chesapeake center was credited.  As late as September 29, 2008, however, the October 2005 check for the Portsmouth center still had not been credited to Dunlap's account even though AAMCO had received the proceeds from the check in October 2005.  Moreover, the monthly statements provided by AAMCO to Dunlap actually reflected credit balances as of June 8, 2006. | Throughout my history with AAMCO, I have been wrongfully accused of not submitting reports and not paying costs or expenses that were purportedly due to AAMCO. Dunlap Aff. ¶35

In the overwhelming majority of incidents, I have proven that AAMCO's records were incorrect and that amounts allegedly owed in fact had been paid and reports supposedly not submitted had in fact been sent. Dunlap Aff. ¶50In the instances in which I concurred with AAMCO's claims that amounts or reports were outstanding, I immediately remedied those situations in accordance with the terms of my franchise agreements. Dunlap Aff. ¶51

On April 1, 2006, I wrote to Gerald Ferrier, Director of Financial Services at AAMCO, notifying him that any and all allegedly past due reports had been submitted twice, and that I had addressed this issue with Barbara, to whom Mr. Ferrier had referred me, who acknowledged that the reports had been received but not posted to my account. Dunlap Aff. ¶62

On April 18, 2006, I wrote again to Mr. Ferrier regarding payments that I had made in October 2005 that still had not been posted on my account by AAMCO. Dunlap Aff. ¶64

Thus, I cured all of the deficiencies identified in the Termination Letters within the time periods provided for in the respective franchise agreements. Dunlap Aff. ¶76 |

4

**COMPARISON OF ALLEGATIONS BETWEEN THIS CASE AND 2007 LAWSUIT**

| Complaint—This case | 2007 Law Suit: Amended Counterclaim (Ex. 3) ("Am.CC") and Affidavit of James M. Dunlap (Ex. 4) ("Dunlap Aff.") |
|---|---|
| ¶39 – Notwithstanding these efforts to cure, on June 9, 2006, AAMCO notified Dunlap that both of his franchises had been terminated for failure to cure the alleged defaults.  The items listed in the Notice of Termination were false and represented a pretext as AAMCO and Leff had already decided to terminate Dunlap's centers as evidenced by the contracts entered into with Truskowski and Biller.  The Notice of Termination cited specific unpaid items that, in fact, had been paid by check in October 2005, and asserted that the financial reports had not been received.  Receipts from the US Post Office indicate that the reports had been sent in a timely fashion. | Despite counterclaimant Dunlap's compliance with the franchise agreements, ATI improperly and without legal right or cause purportedly terminated the franchise agreements effective as of June 9, 2006. Am CC ¶9

 Despite my compliance with the requirements of the franchise agreements, AAMCO on June 9, 2006 sent two letters each entitled "Termination of Franchise." Dunlap Aff. ¶77

Thus, it seems plain to me that the May 8th Termination Letters from AAMCO  were a mere pretext to put in motion a decision that had previously been made by AAMCO to eliminate the Centers. Dunlap Aff. ¶ 102

ATI's purported termination of the franchise agreements was improper and constitutes a material breach of the franchise agreements by ATI. Am. CC ¶10 |
| ¶42 – Based on Dunlap's refusal to forfeit the rights to his Portsmouth franchise, on behalf of AAMCO, O'Donnell initiated an unwarranted, punitive action by removing all listings for Dunlap's centers in the 2006-07 Verizon Yellow Pages directory for the Tidewater, Virginia area that was to be published in October 2006. | ATI has also wrongfully denied counterclaimant Dunlap access to ATI advertising, including the placement of ads in the various Yellow Pages, which has significantly harmed Counterclaimant's business by reducing the number of customers and creating the impression in the market that counterclaimant Dunlap is not an authorized AAMCO franchise. Am. CC ¶16

Despite continuing to treat the Centers as authorized franchises through October 2006 and my repeated objections to the alleged terminations, by letter dated July 18, 2006, AAMCO's then General Counsel, Mary C. McMonagle, notified the local Portsmouth and Chesapeake yellow page publishers that the Centers were not authorized to use AAMCO's name and marks. Dunlap Aff. ¶90 |

5

**COMPARISON OF ALLEGATIONS BETWEEN THIS CASE AND 2007 LAWSUIT**

| Complaint—This case | 2007 Law Suit:  Amended Counterclaim (Ex. 3) ("Am.CC") and Affidavit of James M. Dunlap (Ex. 4) ("Dunlap Aff.") |
|---|---|
|  | As a result of that letter, I have been denied access to any of the local yellow page and was unable to place any ads in the current yellow pages for either of the Centers. Dunlap Aff. ¶91 |
| ¶43 – Despite the Notice of Termination dated June 9, 2006, Dunlap continued to operate both of his centers as AAMCO centers.  He continued to receive AAMCO statements and notices of other pertinent information, technical advice and FOCUS software support.  He continued to submit weekly financial reports and made payments to AAMCO, which were willingly accepted.  Dunlap also continued to participate and support the local advertising pool.  These actions continued until Dunlap requested and was denied technical assistance and FOCUS software support in November, 2006. | Despite the alleged termination of the Portsmouth Center and Chesapeake Center in Jun 2006, ATI continued to treat Dunlap as an authorized franchisee under the agreements through September 2006. Am. CC ¶12<br><br>Some time in October, 2006 (approximately 3 months after the alleged termination), ATI ceased providing counterclaimant Dunlap with the rights and services he is entitled to under the franchise agreements. Am. CC ¶13<br><br>Some time in October, 2006, ATI ceased providing counterclaimant Dunlap with access to the technical assistance hot line to which he is entitled under the franchise agreement.¶80 – Despite the purported termination of the franchise agreements, AAMCO continued to treat the Centers as fully authorized AAMCO franchises. Am. CC Am. CC ¶14<br><br>Through October 2006, AAMCO continued to invoice the Centers for franchise fees and I continued to pay those invoiced fees. Dunlap Aff. ¶81<br><br>Even after the purported termination of the Centers on June 9, 2006, AAMCO continued to treat the Centers as authorized AAMCO franchises until October 2006 when Mr. Turkowski's conversion to an AAMCO Center was complete and the new yellow pages ads were published with Mr. Turkowski's AAMCO advertisement and telephone number. Dunlap Aff. ¶103 |

6

**COMPARISON OF ALLEGATIONS BETWEEN THIS CASE AND 2007 LAWSUIT**

| Complaint—This case | 2007 Law Suit: Amended Counterclaim (Ex. 3) ("Am.CC") and Affidavit of James M. Dunlap (Ex. 4) ("Dunlap Aff.") |
|---|---|
| ¶47 – By letter dated November 7, 2006, the conversions of the two Cottman centers in the Tidewater market were announced by AAMCO. This announcement coincided with the publication of the 2006-2007 Verizon Yellow Pages which, as a result of AAMCO's actions, did not list Dunlap's centers. The conversion of the Cottman center in Chesapeake owned by Biller occurred on November 2, 2006, while the conversion of the Cottman center in Portsmouth owned by Truskowski occurred on November 3, 2006. | Not coincidentally, in October 2006, AAMCO completed the conversion of a former Cottman Transmission Center in Portsmouth, Virginia into an AAMCO Center. Dunlap Aff. ¶94<br><br>At the same time, AAMCO completed the conversion of a former Cottman Transmission Center in Chesapeake, Virginia into an AAMCO Center. Dunlap Aff. ¶95<br><br>The New Portsmouth AAMCO Center is owned and operated by Joseph Turkowski, and the center is less than a mile away from the Portsmouth Center. Dunlap Aff. ¶96 |